1  NICOLA T. HANNA
2  United States Attorney
   THOMAS D. COKER
3  Assistant United States Attorney
   Chief, Tax Division
4  ANDREW T. PRIBE (CA SBN 254904)
5  Assistant United States Attorney
        Federal Building, Suite 7211
6        300 North Los Angeles Street
7        Los Angeles, California 90012
        Telephone: (213) 894-6551
8        Facsimile: (213) 894-0115
9        E-mail: andrew.t.pribe@usdoj.gov

10
   *Attorneys for the United States of America*
11

12              UNITED STATES DISTRICT COURT
13             CENTRAL DISTRICT OF CALIFORNIA
                     WESTERN DIVISION
14

15 | UNITED STATES OF AMERICA, | Case No.: 2:19-cv-03984 |

16 | Plaintiff | |

17 | | Complaint to Reduce FBAR Penalty to Judgment |

   | v. | |
18
   | | Personal identifiers have been redacted. |
19 | TEYMOUR KHOUBIAN, | |

20 | Defendant | |

21

22

23

24

25

26

27

28

The United States of America, Plaintiff, for its complaint against Teymour Khoubian, Defendant, alleges:

## I.   Jurisdiction and venue.

1.     This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 because this action arises under the laws of the United States and because the United States is the plaintiff.

2.     This action is brought under 31 U.S.C. § 3711(g)(4)(C) at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury.

3.     Venue for this action is within the Central District of California under 28 U.S.C. § 1391 because Defendant resides within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## II.   Statutory and regulatory provisions for the FBAR penalty.

4.     Section 5314 of Title 31 of the United States Code authorizes the Secretary of the Treasury to require United States citizens and residents to report certain transactions with foreign financial agencies.

5.     Under the implementing regulations of 31 U.S.C § 5314, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year such relationship exists[.]"  31 C.F.R. § 1010.350(a).

6.     This report must be filed on a Report of Foreign Bank and Financial Accounts, which is also referred to as an FBAR.  The report is due by June 30 "of each calendar year with respect to foreign financial accounts

exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c).

7. For willful violations of the reporting requirements mandated by 31 U.S.C. § 5314, Congress—through 31 U.S.C. § 5321(a)(5)(C)(i)—authorized a maximum penalty of the greater of (1) $100,000 or (2) 50% of the balance in the account at the time of the violation.

8. Under 31 U.S.C. § 5321(b)(2)(A), the Government may bring suit to recover the penalty assessed under 31 U.S.C. § 5321(a) at any time before the end of the 2-year period beginning on the date the penalty was assessed.

## Count I

### Claim to reduce FBAR penalty to judgment

9. Teymour Khoubian was born in Iran.

10. In September 2008, Teymour Khoubian became a United States citizen.

11. For tax year 2010, Teymour Khoubian had at least one foreign account subject to the reporting requirement of 31 U.S.C. § 5314 as implemented under 31 C.F.R. §§ 1010.350(a) and 1010.306(c).

12. In tax year 2010, Teymour Khoubian had signature authority over and was a beneficiary of account number [xxxx]12 at Bank Leumi le-Israel, B.M., ("Bank Leumi") in Tel Aviv Israel, which had a highest account balance during 2010 of $18,408,987, and a balance on June 30, 2011, of $15,372,007.

13. In tax year 2010, Teymour Khoubian was the beneficial owner of an account at Commerzbank AG in Germany.

14. For tax year 2010, Teymour Khoubian willfully did not disclose all of his foreign accounts as required by law.

2

15.    As of at least 2009, Teymour Khoubian was aware that the Internal Revenue Service had a program called the Offshore Voluntary Disclosure Program, which allowed U.S. taxpayers to voluntarily disclose their previously undisclosed foreign accounts.

16.    Beginning in 2009 and continuing until 2012, Teymour Khoubian had multiple discussions with bankers at Bank Leumi seeking, and in some cases receiving, assurances that Bank Leumi would not disclose the existence of his accounts to the Internal Revenue Service.

17.    During 2011 and 2012, Bank Leumi requested that Teymour Khoubian sign a Form W-9 for the purposes of U.S. tax reporting, which Teymour Khoubian declined to do on multiple occasions.

18.    As late as 2012, Teymour Khoubian attempted to persuade bankers at Bank Leumi to assist him in further concealing his accounts from the IRS by: (1) putting the accounts in a relative's name; (2) using his Iranian passport to document him as a non-U.S. person; and (3) transferring his funds to his account at Commerzbank in Germany, where he was identified as an Iranian citizen.

19.    Teymour Khoubian prepared his own federal income-tax return for tax year 2010.

20.    Teymour Khoubian's federal income-tax return for tax year 2010 was materially false in the following respects: (1) it omitted at least $291,400 of interest earned from Bank Leumi, which Teymour Khoubian knew should have been reported; and (2) it failed to disclose Teymour Khoubian's ownership interest in and signature authority over his foreign accounts at Bank Leumi and Commerzbank.

21.    In efforts to conceal his foreign accounts from the Internal Revenue Service, on September 12, 2012, when Teymour Khoubian was questioned by special agents of the Criminal Investigation Division of the

Internal Revenue Service about his accounts at Bank Leumi, he falsely stated that the Bank Leumi accounts were not in his name and that he was not aware of the rules requiring U.S. persons to report their foreign accounts.

22.    On May 25, 2017, the IRS assessed an FBAR penalty of $7,686,003.50 against Teymour Khoubian.

23.    On March 16, 2018, the IRS demanded that Teymour Khoubian pay the FBAR penalty that was assessed against him on May 25, 2017.

24.    Teymour Khoubian did not pay any portion of the FBAR penalty against him within 90 days of the March 16, 2018, demand for payment.

25.    Under 31 U.S.C. § 3717(e), Teymour Khoubian is liable for a failure-to-pay penalty of 6% per annum for any portion of the FBAR penalty that remained unpaid after 90 days from March 16, 2018.

26.    On November 1, 2018, Teymour Khoubian and his attorney executed a plea agreement in *United States v. Teymour Khoubian,* case no. 17-cr-452 MWF (C.D. Cal.).

27.    A copy of the plea agreement referred to in paragraph 26 is attached as exhibit 1.

28.    Paragraph 3(f) of the plea agreement states:

Defendant further agrees that he was assessed a Report of Foreign Bank and Financial Accounts penalty ("FBAR penalty") of $7,686,004, under section 5321(a)(5) and/or 5321(a)(6) of Title 31 of the United States Code.  This penalty was assessed because defendant willfully failed to file an FBAR for calendar year 2010.  Defendant waives any and all defenses to the assessment and collection of the FBAR penalty under Title 31 of the United States Code, including any defense based on the expiration of the period of limitations on the assessment or collection of penalties and interest.

4

29.    Paragraph 3(g) of the plea agreement states:

Defendant agrees to the entry of a civil judgment in favor of the United States and against Teymour Khoubian for $7,686,004, which was assessed on May 25, 2017, plus all subsequent statutory accruals including interest and penalties.

30.    Paragraph 3(h) of the plea agreement states:

Defendant agrees to pay the total sum of money regarding his FBAR penalty prior to sentencing to the United States Treasury, pursuant to the instructions provided to defendant and defendant's counsel by the Department of Justice Tax Division Trial Attorney.

31.    On April 25, 2019, Teymour Khoubian delivered to the United States Attorney's Office a check in the amount of $7,686.003.50 to be applied to his 2010 FBAR penalty.

32.    As of April 26, 2019, the total outstanding balance of Teymour Khoubian's liability under 31 U.S.C. § 5321(a)(5) for the calendar year 2010—without consideration of Teymour Khoubian's April 25, 2019, payment—was computed to be $8,244,028.94 including interest in the amount of $85,493.63 and the late-payment penalty provided for under 31 U.S.C. § 3717(e)(2) in the amount of $472,531.31.

33.    The United States is entitled to judgment against Teymour Khoubian for $558,022.44 as of April 26, 2019, plus all subsequent statutory accruals including interest and penalties, plus costs and expenses, less an adjustment to interest and the failure-to-pay penalty for one day.

Wherefore, the United States of America, Plaintiff, requests the Court to enter judgment in favor of the United States and against Teymour Khoubian for $558,022.44 as of April 26, 2019, plus all subsequent

///

///

statutory accruals including interest and penalties, plus costs and expenses, less an adjustment to interest and the failure-to-pay penalty for one day.

Dated: May 7, 2019     NICOLA T. HANNA
          United States Attorney
          THOMAS D. COKER
          Assistant United States Attorney
          Chief, Tax Division

          **/s/ Andrew T. Pribe**
          ANDREW T. PRIBE
          Assistant United States Attorney

Exhibit 1

1  NICOLA T. HANNA
   United States Attorney
2  THOMAS D. COKER
   Chief, Tax Division
3  ROBERT F. CONTE (SBN 157582)
   Assistant United States Attorney
4       300 North Los Angeles Street
        Federal Building, Room 7211
5       Los Angeles, California 90012
        Telephone: (213) 894 6607
6       Facsimile: (213) 894 0115
        E mail: robert.conte@usdoj.gov
7  CHRISTOPHER S. STRAUSS (DC Bar No. 1030802)
   Trial Attorney
8  ELLEN M. QUATTRUCCI (DC Bar No. 462103)
   Trial Attorney
9  Tax Division, Western Criminal Enforcement Section
   United States Department of Justice
10      601 D. St. NW, Room 7022
        Washington, D.C. 20004
11      Telephone: (202) 514-5762
        Facsimile: (202) 514-9623
12      E-mail:  Christopher.S.Strauss@usdoj.gov
                 Ellen.M.Quattrucci@usdoj.gov
13
   Attorneys for Plaintiff
14 UNITED STATES OF AMERICA

15              UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17 UNITED STATES OF AMERICA,        No. CR 17-CR-452-MWF

18          Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                    TEYMOUR KHOUBIAN
19          v.

20 TEYMOUR KHOUBIAN,

21          Defendant.

22

23      1.    This constitutes the plea agreement between TEYMOUR

24 KHOUBIAN ("defendant") and the United States Attorney's Office for

25 the Central District of California and the U.S. Department of

26 Justice, Tax Division (collectively the "USAO") in the above-

27 captioned case.  This agreement is limited to the USAO and cannot

28 bind any other federal, state, local, or foreign prosecuting,

1   enforcement, administrative, or regulatory authorities and is subject
2   to the approval of the Department of Justice, Tax Division.

3                          DEFENDANT'S OBLIGATIONS

4       2.  Defendant agrees to:

5           a.  At the earliest opportunity requested by the USAO and
6   provided by the Court, appear and plead guilty to Counts Two and
7   Three of the indictment in <u>United States v. Khoubian</u>, CR No. 17-CR-
8   452-MWF, which each charge defendant with willfully making and
9   subscribing a false tax return in violation of 26 U.S.C. § 7206(1).

10          b.  Not contest facts agreed to in this agreement.

11          c.  Abide by all agreements regarding sentencing contained
12  in this agreement.

13          d.  Appear for all court appearances, surrender as ordered
14  for service of sentence, obey all conditions of any bond, and obey
15  any other ongoing court order in this matter.

16          e.  Not commit any crime; however, offenses that would be
17  excluded for sentencing purposes under United States Sentencing
18  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
19  within the scope of this agreement.

20          f.  Be truthful at all times with Pretrial Services, the
21  United States Probation Office, and the Court.

22          g.  Pay the applicable special assessments at or before
23  the time of sentencing unless defendant lacks the ability to pay and
24  prior to sentencing submits a completed financial statement on a form
25  to be provided by the USAO.

26          h.  Pay the restitution ordered by the Court and agreed to
27  by defendant in Paragraph 10.

28

                                   2

1     DEFENDANT'S OTHER OBLIGATIONS

2          3.    Defendant also agrees:

3               a.    To cooperate with the IRS in the civil examination,

4     determination, assessment and collection of income taxes related to

5     (i) defendant's 2005 through 2012 individual income tax returns,

6     including reporting and paying all taxes, penalties and interest, on

7     all of the income of whatever kind earned on the total amount of

8     assets in all foreign accounts held individually or jointly by the

9     defendant at Bank Leumi le-Israel, B.M. and Commerzbank AG during

10    2005 and 2012; and (ii) any related corporate/entity tax returns.

11    Defendant further agrees not to conceal, transfer, or dissipate funds

12    or property that could be used to satisfy such taxes, penalties and

13    interest.

14               b.    Defendant agrees to sign any waivers of statutes of

15    limitations as requested by the Internal Revenue Service; and further

16    agrees to waive any objection to the assessment and collection of any

17    tax, penalties, and interest for tax years 2005 through 2012,

18    inclusive regarding any of the tax returns.

19               c.    To repatriate any funds or assets held in any foreign

20    country or outside the United States regarding accounts over which

21    defendant has a financial interest in, or signature or other

22    authority over.

23               d.    To give up any and all objections that could be

24    asserted to the Examination Division of the IRS receiving materials

25    or information obtained during the criminal investigation of this

26    matter, including materials and information obtained through grand

27    jury subpoenas.

28

3

1           e.    That nothing in this agreement shall preclude or bar

2    the IRS from the assessment and/or collection of any additional tax

3    liability from defendant, including interest and penalties,

4    determined to be due and owing from defendant by the IRS for 2005,

5    2006, 2007, 2008, 2009, 2010, 2011, and 2012.

6           f.    Defendant further agrees that he was assessed a Report

7    of Foreign Bank and Financial Accounts penalty ("FBAR penalty") of

8    $7,686,004, under section 5321(a)(5) and/or 5321(a)(6) of Title 31 of

9    the United States Code.  This penalty was assessed because defendant

10   willfully failed to file an FBAR for calendar year 2010.  Defendant

11   waives any and all defenses to the assessment and collection of the

12   FBAR penalty under Title 31 of the United States Code, including any

13   defense based on the expiration of the period of limitations on the

14   assessment or collection of penalties and interest.

15          g.    Defendant agrees to the entry of a civil judgment in

16   favor of the United States and against Teymour Khoubian for

17   $7,686,004, which was assessed on May 25, 2017, plus all subsequent

18   statutory accruals including interest and penalties.

19          h.    Defendant agrees to pay the total sum of money

20   regarding his FBAR penalty prior to sentencing to the United States

21   Treasury, pursuant to instructions provided to defendant and

22   defendant's counsel by the Department of Justice Tax Division Trial

23   Attorney.

24                     THE USAO'S OBLIGATIONS

25     4.    The USAO agrees to:

26          a.    Not contest facts agreed to in this agreement.

27          b.    Abide by all agreements regarding sentencing contained

28   in this agreement.

4

                    c.    At the time of sentencing, move to dismiss the
remaining counts of the indictment.  Defendant agrees, however, that
at the time of sentencing the Court may consider any dismissed
charges in determining the applicable Sentencing Guidelines range,
the propriety and extent of any departure from that range, and the
sentence to be imposed.

                    d.    At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up to
and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

                    e.    Not to further criminally prosecute defendant for any
additional violations known to the USAO at the time of the plea,
arising out of the information provided by the defendant, and
defendant's conduct described in the indictment or described in the
statement of facts provided in Attachment A.

                    f.    The USAO further agrees not to prosecute the
defendant's wife, D.K., or his mother, T.K.K., for any violations of
law known to the USAO at the time of the plea arising out of the
indictment, and for any conduct described in the indictment or the
statement of facts provided in Attachment A.

                    g.    Defendant understands that the USAO is free to
prosecute defendant, his wife, D.K., or his mother, T.K.K., for any
other unlawful past conduct or any unlawful conduct that occurs after
the date of this agreement.  Defendant understands that at the time
of sentencing, the Court may consider any relevant conduct related to
the crime set forth herein in determining the applicable Sentencing

                                      5

1 Guidelines range, the propriety and extent of any departure from that

2 range, and the sentence to be imposed after consideration of the

3 Sentencing Guidelines and all other relevant factors under 18 U.S.C.

4 § 3553(a).

5       h.    Recommend that defendant be sentenced to a term of

6 imprisonment no higher than the low end of the applicable Sentencing

7 Guidelines range. For purposes of this agreement, the low end of the

8 Sentencing Guidelines range is that defined by the Sentencing Table

9 in U.S.S.G. Chapter 5, Part A.

10                          NATURE OF THE OFFENSES

11       5.   Defendant understands that for defendant to be guilty of

12 the crime charged in Count Two, that is, Willfully Making and

13 Subscribing A False Tax Return, in violation of Title 26, United

14 States Code, Section 7206(1) the following must be true:

15       a.    The defendant made and signed a U.S. Individual Income

16 Tax Return for the year 2009 that he knew contained false information

17 as to a material matter;

18       b.    The return contained a written declaration that it was

19 made under the penalties of perjury; and

20       c.    The defendant acted willfully in filing the false

21 return.

22       d.    Defendant admits that defendant is, in fact, guilty of

23 this offense as described in Count Two of the indictment.

24       6.   Defendant understands that for defendant to be guilty of

25 the crime charged in Count Three, that is, Willfully Making and

26 Subscribing A False Tax Return, in violation of Title 26, United

27 States Code, Section 7206(1) the following must be true:

28

                                   6

1            a.    The defendant made and signed a U.S. Individual Income
2 Tax Return for the year 2010 that he knew contained false information
3 as to a material matter;

4            b.    The return contained a written declaration that it was
5 made under the penalties of perjury; and

6            c.    The defendant acted willfully in filing the false
7 return.

8            d.    Defendant admits that defendant is, in fact, guilty of
9 this offense as described in Count Three of the indictment.

10                      PENALTIES AND RESTITUTION

11    7.    Defendant understands that the statutory maximum sentence
12 that the Court can impose for each violation of Title 26, United
13 States Code, Section 7206(1)is: three years of imprisonment; a one
14 year period of supervised release; a fine of $250,000 or twice the
15 amount of gross gain or gross loss resulting from the offense,
16 whichever is greater; and a mandatory special assessment of $100.
17 Defendant agrees to pay the special assessment at or before the time
18 of sentencing.

19    8.    Defendant understands, therefore, that the total maximum
20 sentence for all offenses to which defendant is pleading guilty is:
21 six years of imprisonment; a one year period of supervised release; a
22 fine of $500,000 or twice the amount of gross gain or gross loss
23 resulting from the offenses, whichever is greater; and a mandatory
24 special assessment of $200. Defendant agrees to pay the special
25 assessment at or before the time of sentencing.

26    9.    Defendant understands and agrees that the Court must order
27 defendant to pay the costs of prosecution, which may be in addition
28 to the statutory maximum fine stated above. The government

7

acknowledges that it has not incurred any recoverable expenses in connection with this prosecution as of the date of his agreement.

10. Defendant further agrees to make restitution for the loss of income tax revenue associated with the income earned on defendant's foreign financial accounts at Bank Leumi le-Israel, B.M. during the calendar years 2005 to 2012 that defendant willfully omitted from his tax returns. Defendant further agrees that defendant will not seek the discharge of any restitution obligation that the court may order, in whole or in part, in any present or further bankruptcy proceeding. The parties agree that the amount of restitution owed to the IRS is as follows:

| TAX YEAR | AMOUNT TO BE CREDITED TO TAX |
|---|---|
| 2005 | $75,311 |
| 2006 | $106,239 |
| 2007 | $131,498 |
| 2008 | $127,383 |
| 2009 | $92,119 |
| 2010 | $78,294 |
| 2011 | $0 |
| 2012 | $1,466 |
| Total Tax Due | $612,310 |

11. Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment

8

1  schedule does not prohibit or limit the methods by which the United
2  States may immediately enforce the judgment in full.

3      12.  If the Court orders the defendant to pay restitution to
4  the IRS for the failure to pay tax, either directly as part of the
5  sentence or as a condition of supervised release or probation, the
6  IRS will use the restitution order as the basis for a civil
7  assessment.  See 26 U.S.C. §6201(a)(4).  The defendant does not have
8  the right to challenge the amount of this restitution-based
9  assessment.  See 26 U.S.C. §6201(a)(4)(C).  Neither the existence of
10 a restitution payment schedule nor the defendant's timely payment of
11 restitution according to that schedule will preclude the IRS from
12 immediately collecting the full amount of the restitution-based
13 assessment, including by levy and restraint under 26 U.S.C. §6331.

14     13.  Defendant agrees that he will sign any IRS forms
15 deemed necessary by the IRS to enable the IRS to make an immediate
16 assessment of that portion of the tax and interest that he agrees to
17 pay as restitution pursuant to this agreement.  Defendant also agrees
18 to sign IRS Form 8821, "Tax Information Authorization."

19     14.  Defendant agrees not to file any claim for refund of
20 taxes, or penalties represented by an amount of restitution paid
21 pursuant to this agreement.

22     15.  The parties understand that defendant will receive
23 proper credit, consistent with paragraph 10 above, for the payments
24 made pursuant to this agreement, including any prior payments made by
25 defendant.  Except as set forth in the previous sentence, nothing in
26 this agreement shall limit the IRS in its lawful examination,
27 determination, assessment, or collection of any taxes, penalties or
28

9

1  interest due from the defendant for the time periods covered by this

2  agreement or any other time period.

3      16.  Defendant agrees to send all payments made pursuant to the

4  District Court's restitution order to the Clerk of Court.

5      17.  With each payment to the Clerk of Court made payable to the

6  District Court's restitution order, defendant will provide the

7  following information:

8          a.  Defendant's name and Social Security number;

9          b.  The District Court and the docket number assigned to

10     the case;

11         c.  Tax year(s) or period(s) for which restitution has been

12     ordered;

13         d.  A statement that the payment is being submitted

14  pursuant to the District Court's restitution order.

15     18.  Defendant agrees to include a request that the Clerk of

16  Court send the information, along with the defendant's payments, to

17  the address below.

18     19.  Defendant also agrees to send a notice of any payments made

19  pursuant to this agreement, including the information listed in the

20  previous paragraph, to the IRS at the following address:

21         IRS-RACS
           Attn:  Mail Stop 6261, Restitution
22         333  W. Pershing Avenue
           Kansas City, MO 64108
23

24     20.  Defendant understands that supervised release is a period

25  of time following imprisonment during which defendant will be subject

26  to various restrictions and requirements.  Defendant understands that

27  if defendant violates one or more of the conditions of any supervised

28  release imposed, defendant may be returned to prison for all or part

1  of the term of supervised release, which could result in defendant
2  serving a total term of imprisonment greater than the statutory
3  maximum stated above.

4       21.  Defendant also understands that, by pleading guilty,
5  defendant may be giving up valuable government benefits and valuable
6  civic rights, such as the right to vote, the right to possess a
7  firearm, the right to hold office, and the right to serve on a jury.
8  Defendant further understands that the conviction in this case may
9  subject defendant to various collateral consequences, including but
10 not limited to, deportation, revocation of probation, parole, or
11 supervised release in another case, and suspension or revocation of a
12 professional license.  Defendant understands that unanticipated
13 collateral consequences will not serve as grounds to withdraw
14 defendant's guilty plea.

15                         FACTUAL BASIS

16      22.  Defendant admits that defendant is, in fact, guilty of the
17 offenses to which defendant is agreeing to plead guilty.  Defendant
18 and the USAO agree to the statement of facts provided in Attachment A
19 and agree that this statement of facts is sufficient to support pleas
20 of guilty to the charges described in this agreement and to establish
21 the Sentencing Guidelines factors set forth in paragraph 24 below,
22 but is not meant to be a complete recitation of all facts relevant to
23 the underlying criminal conduct or all facts known to either party
24 that relate to that conduct.

25                      SENTENCING FACTORS

26      23.  Defendant understands that in determining defendant's
27 sentence the Court is required to calculate the applicable Sentencing
28 Guidelines range and to consider that range, possible departures

                              11

1   under the Sentencing Guidelines, and the other sentencing factors set

2   forth in 18 U.S.C. § 3553(a). Defendant understands that the

3   Sentencing Guidelines are advisory only, that defendant cannot have

4   any expectation of receiving a sentence within the calculated

5   Sentencing Guidelines range, and that after considering the

6   Sentencing Guidelines and the other § 3553(a) factors, the Court will

7   be free to exercise its discretion to impose any sentence it finds

8   appropriate up to the maximum set by statute for the crimes of

9   conviction.

10      24. Defendant and the USAO agree to the following applicable

11   Sentencing Guidelines factors:

12

13      Base Offense Level:      20   U.S.S.G. § 2T1.1; 2T4.1(H)

14      Specific Offense Characteristics

15        Sophisticated Means    2   U.S.S.G. § 2T1.1(b)(2)

16      Acceptance of Responsibility: -3   U.S.S.G. § 3E1.1

17      Total Offense Level:      19

18

19      25. Defendant and the USAO agree not to seek, argue, or suggest

20   in any way, either orally or in writing, that any other specific

21   offense characteristics, adjustments, or departures relating to the

22   applicable Offense Level be imposed. The USAO will agree to a

23   downward adjustment for acceptance of responsibility (and, if

24   applicable, move for an additional level under 3E1.1(b)) only if the

25   conditions set forth in this agreement are met. Defendant agrees,

26   however, that if, after signing this agreement but prior to

27   sentencing, defendant were to commit an act, or the USAO were to

28   discover a previously undiscovered act committed by defendant prior

1  to signing this agreement, which act, in the judgment of the USAO,

2  constituted obstruction of justice within the meaning of U.S.S.G. §

3  3C1.1, the USAO would be free to seek the enhancement set forth in

4  that section.  Defendant understands that there is no agreement as to

5  defendant's criminal history or criminal history category.

6      26.  Defendant reserves the right to argue for a sentence

7  outside the sentencing range established by the Sentencing Guidelines

8  based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2),

9  (a)(3), (a)(6), and (a)(7).

10  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

11      27.  Defendant understands that by pleading guilty, defendant

12  gives up the following rights:

13          a.  The right to persist in a plea of not guilty.

14          b.  The right to a speedy and public trial by jury.

15          c.  The right to be represented by counsel -- and if

16  necessary have the court appoint counsel -- at trial.  Defendant

17  understands, however, that, defendant retains the right to be

18  represented by counsel -- and if necessary have the court appoint

19  counsel -- at every other stage of the proceeding.

20          d.  The right to be presumed innocent and to have the

21  burden of proof placed on the government to prove defendant guilty

22  beyond a reasonable doubt.

23          e.  The right to confront and cross-examine witnesses

24  against defendant.

25          f.  The right to testify and to present evidence in

26  opposition to the charges, including the right to compel the

27  attendance of witnesses to testify.

28

020

1    g.   The right not to be compelled to testify, and, if
2  defendant chose not to testify or present evidence, to have that
3  choice not be used against defendant.

4    h.   Any and all rights to pursue any affirmative defenses,
5  Fourth Amendment or Fifth Amendment claims, and other pretrial
6  motions that have been filed or could be filed.

7                 <u>WAIVER OF APPEAL OF CONVICTION</u>

8    28.  Defendant understands that, with the exception of an appeal
9  based on a claim that defendant's guilty pleas were involuntary, by
10 pleading guilty defendant is waiving and giving up any right to
11 appeal defendant's convictions on the offenses to which defendant is
12 pleading guilty.

13           <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

14   29.  Defendant agrees that, provided the Court imposes a total
15 term of imprisonment on all counts of conviction that is within or
16 below the range corresponding to a total offense level of 19 and the
17 criminal history calculated by the Court, defendant gives up the
18 right to appeal all of the following: (a) the procedures and
19 calculations used to determine and impose any portion of the
20 sentence; (b) the term of imprisonment imposed by the Court; (c) the
21 fine imposed by the court, provided it is within the statutory
22 maximum; (d) the amount and terms of any restitution order, provided
23 it requires payment of no more than $612,310; (e) the term of
24 probation or supervised release imposed by the Court, provided it is
25 within the statutory maximum; and (f) any of the following conditions
26 of probation or supervised release imposed by the Court: the
27 conditions set forth in General Orders 318, 01-05, and/or 05-02 of
28 this Court; the drug testing conditions mandated by 18 U.S.C.

                                 14

§§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

    30.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court calculates the offense level to be used for selecting a sentencing range under the Sentencing Guidelines to be 19 or above; (c) the Court imposes a term of imprisonment within or above the range corresponding to a total offense level of 19 and the criminal history calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $612,310.

RESULT OF WITHDRAWAL OF GUILTY PLEA

    31.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

15

1                EFFECTIVE DATE OF AGREEMENT

2     32. This agreement is effective upon signature and execution of

3 all required certifications by defendant, defendant's counsel, and an

4 Assistant United States Attorney or Department of Justice Trial

5 Attorney.

6                 BREACH OF AGREEMENT

7     33. Defendant agrees that if defendant, at any time after the

8 signature of this agreement and execution of all required

9 certifications by defendant, defendant's counsel, and an Assistant

10 United States Attorney or Department of Justice Trial Attorney,

11 knowingly violates or fails to perform any of defendant's obligations

12 under this agreement ("a breach"), the USAO may declare this

13 agreement breached. All of defendant's obligations are material, a

14 single breach of this agreement is sufficient for the USAO to declare

15 a breach, and defendant shall not be deemed to have cured a breach

16 without the express agreement of the USAO in writing. If the USAO

17 declares this agreement breached, and the Court finds such a breach

18 to have occurred, then: (a) if defendant has previously entered

19 guilty pleas pursuant to this agreement, defendant will not be able

20 to withdraw the guilty pleas, and (b) the USAO will be relieved of

21 all its obligations under this agreement.

22     34. Following the Court's finding of a knowing breach of this

23 agreement by defendant, should the USAO choose to pursue any charge

24 or any civil, administrative, or regulatory action that was either

25 dismissed or not filed as a result of this agreement, then:

26         a. Defendant agrees that any applicable statute of

27 limitations is tolled between the date of defendant's signing of this

28 agreement and the filing commencing any such action.

  b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

  c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

35.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

17

## COURT AND PROBATION OFFICE NOT PARTIES

36. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

37. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 23 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

38. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding

18

1  the sentence defendant will receive, except that it will be within

2  the statutory maximum.

3  NO ADDITIONAL AGREEMENTS

4  39.  Defendant understands that, except as set forth herein,

5  there are no promises, understandings, or agreements between the USAO

6  and defendant or defendant's attorney, and that no additional

7  promise, understanding, or agreement may be entered into unless in a

8  writing signed by all parties or on the record in court.

9  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

10  40.  The parties agree that this agreement will be considered

11  part of the record of defendant's guilty plea hearing as if the

12  entire agreement had been read into the record of the proceeding.

13  AGREED AND ACCEPTED

14  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
15  CALIFORNIA

16  NICOLA T. HANNA
    United States Attorney

17

18  _____

19  CHRISTOPHER S. STRAUSS          Date
    ELLEN M. QUATTRUCCI
20  Trial Attorneys
    U.S. Department of Justice,
21  Tax Division

22

23  _____     11-1-2018
    TEYMOUR KHOUBIAN                Date
24  Defendant

25

26  _____     Nov. 1, 2018
    John Hanusz, Esq.               Date
27  Attorney for Defendant TEYMOUR
    KHOUBIAN

28

19

026

1  the sentence defendant will receive, except that it will be within

2  the statutory maximum.

### NO ADDITIONAL AGREEMENTS

4      39.  Defendant understands that, except as set forth herein,

5  there are no promises, understandings, or agreements between the USAO

6  and defendant or defendant's attorney, and that no additional

7  promise, understanding, or agreement may be entered into unless in a

8  writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

10     40.  The parties agree that this agreement will be considered

11  part of the record of defendant's guilty plea hearing as if the

12  entire agreement had been read into the record of the proceeding.

13  AGREED AND ACCEPTED

14  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
15  CALIFORNIA

16  NICOLA T. HANNA
    United States Attorney

17

18  _____        November 2, 2018
    CHRISTOPHER S. STRAUSS                  Date
19  ELLEN M. QUATTRUCCI
    Trial Attorneys
20  U.S. Department of Justice,
    Tax Division

21

22

23  _____        _____
24  TEYMOUR KHOUBIAN                        Date
    Defendant

25

26  _____        _____
    John Hanusz, Esq.                       Date
27  Attorney for Defendant TEYMOUR
    KHOUBIAN

28

                                    19

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          11-1-2018
TEYMOUR KHOUBIAN                          Date
Defendant

20

028

1                    <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2        I am TEYMOUR KHOUBIAN's attorney.  I have carefully and

3  thoroughly discussed every part of this agreement with my client.

4  Further, I have fully advised my client of his rights, of possible

5  pretrial motions that might be filed, of possible defenses that might

6  be asserted either prior to or at trial, of the sentencing factors

7  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17

18  _____      Nov. 1, 2018
    John Hanusz, Esq.                     Date

    Attorney for Defendant

19  TEYMOUR KHOUBIAN

20

21

22

23

24

25

26

27

28

ATTACHMENT A

STATEMENT OF FACTS

1.   TEYMOUR KHOUBIAN ("KHOUBIAN") was born in Iran and came to the United States in 1992.  In 1994, KHOUBIAN became a permanent resident of the United States, and in September of 2008, KHOUBIAN became a naturalized citizen of the United States.

2.   After KHOUBIAN's father passed away in 2003, KHOUBIAN became a signatory and joint beneficial owner of three accounts at Bank Leumi le-Israel, B.M. ("Bank Leumi") in Tel Aviv, Israel.  The Bank Leumi accounts XXXX72, XXXX12, and XXXX65 were owned by KHOUBIAN jointly with his mother, T.K.K. KHOUBIAN was the beneficial owner and had signature authority over these three accounts from at least 2005. KHOUBIAN held a fourth account, XXXX80, at Bank Leumi jointly with his wife, D.K.  He was the beneficial owner and had signature authority over this account from at least 2005 through 2012 (all four accounts are collectively referred to as "the Bank Leumi accounts"). During 2005 through 2012, the Bank Leumi accounts held at least $15 million on deposit and reached a high balance of over $20 million in 2008.

3.   During 2005 through 2012, inclusive, the Bank Leumi accounts produced interest income that KHOUBIAN knew should have been reported on his and T.K.K's U.S. individual income tax returns.

4.   From at least 2005 until at least 2015, KHOUBIAN was also the beneficial owner of an account at Commerzbank AG in Germany that maintained a balance of over $200,000.

5.   KHOUBIAN self-prepared his own U.S. individual income tax returns for tax years 2005 through 2011 and signed all of those returns electronically under penalty of perjury by using a self-

selected Personal Identification Number. KHOUBIAN filed his self-
prepared U.S. individual income tax returns electronically with
Internal Revenue Service (hereinafter "IRS"). KHOUBIAN failed to
file a 2012 U.S. Individual Income Tax Return, Form 1040.

6.    KHOUBIAN's U.S. individual income tax returns for tax
years 2005 through 2010, inclusive, were false in two ways: (i) none
of the interest income produced by his foreign accounts was reported
on his tax returns; and (ii) KHOUBIAN failed to report his ownership
interest and signature authority over the foreign accounts that were
located in Israel and Germany.

7.    In total, the four Bank Leumi accounts jointly held by
KHOUBIAN generated interest income of in excess of $4.0 million
between 2005 and 2010 that was not reported on KHOUBIAN's U.S.
individual income tax returns, T.K.K.'s U.S. individual income tax
returns, or any other income tax return for any related entity. The
tax loss associated with KHOUBIAN's failure to disclose these
accounts is approximately $1.2 million.

8.    KHOUBIAN was responsible for coordinating the preparation
and filing of T.K.K.'s U.S. individual income tax returns, which were
prepared by a third-party tax return preparer. KHOUBIAN willfully
caused the preparation and filing of false U.S. individual income tax
returns for T.K.K. for tax years 2005 through 2010 that (i) omitted
any interest income earned from the Bank Leumi accounts; and (ii)
failed to disclose the existence of, and T.K.K.'s beneficial
ownership or signature authority over, a financial account in Israel.

9.    With respect to his 2011 individual income tax return,
which was filed on or about October 16, 2012, KHOUBIAN failed to
report all of the interest that he earned from his Bank Leumi

2

accounts and failed, on Schedule B, Part III, line 7b, to enter the name of the foreign country Germany, to disclose that he was the beneficial owner of an account at Commerzbank in Germany.

10. As of at least 2009, KHOUBIAN was aware that the IRS had a program called the Offshore Voluntary Disclosure Program (hereinafter the "OVDP"). The OVDP allowed U.S. taxpayers to voluntarily disclose their previously undisclosed foreign accounts and pay a reduced penalty (originally the penalty was 20%, which later increased to 25% in 2011, 27.5% in 2012, and then 50% in 2014) regarding the high aggregate balance for a certain time frame to resolve their civil liability for not declaring or reporting the account to U.S. authorities. As part of the OVDP, the IRS also advised U.S. taxpayers with undisclosed foreign financial accounts that a voluntary disclosure would result in the IRS declining to refer those U.S. taxpayers to the Department of Justice for criminal prosecution.

11. Beginning in 2009 and continuing until 2012, KHOUBIAN had multiple discussions with bankers at Bank Leumi seeking, and in some cases receiving, assurances that Bank Leumi would not disclose the existence of his accounts to the IRS.

12. During 2011 and 2012, Bank Leumi requested that KHOUBIAN sign a Form W-9 for the purpose of U.S. tax reporting. KHOUBIAN declined to sign the Form W-9 on multiple occasions, and as late as 2012, KHOUBIAN attempted to persuade bankers at Bank Leumi to assist him in further concealing his accounts from the IRS by: i) putting the accounts in a relative's name; (ii) using his Iranian passport to document him as a non-U.S. person; and (iii) transferring his funds to his account in Germany at Commerzbank (where he was identified as an Iranian citizen).

1    13.  In an August 13, 2012 recorded telephone conversation with

2   a banker at Bank Leumi, KHOUBIAN stated that the reason he did not

3   want to sign a Form W-9, was "because you have to pay half of it."

4    14.  With respect to KHOUBIAN's U.S. individual income tax

5   return, Form 1040, for tax year 2009 self-prepared by KHOUBIAN and

6   filed with the IRS, the tax return was materially false in that it

7   (i) omitted at least $340,482 of interest earned from the Bank Leumi

8   accounts that KHOUBIAN knew should have been reported; and (ii)

9   failed to disclose KHOUBIAN's ownership interest in and signature

10  authority over the Bank Leumi accounts and the Commerzbank account.

11   15.  KHOUBIAN acted willfully in preparing and filing this

12  false tax return in that he knew he had a duty under U.S. law to

13  report the existence of his foreign accounts and the interest income

14  earned from those accounts on his 2009 U.S. individual income tax

15  return.

16   16.  With respect to KHOUBIAN's U.S. individual income tax

17  return, Form 1040, for tax year 2010 self-prepared by KHOUBIAN and

18  filed with the IRS, the tax return was materially false in that it

19  (i) omitted at least $291,400 of interest earned from the Bank Leumi

20  accounts that KHOUBIAN knew should have been reported; and (ii)

21  failed to disclose KHOUBIAN's ownership interest in and signature

22  authority over the Bank Leumi accounts and the Commerzbank account.

23   17.  KHOUBIAN acted willfully in preparing and filing this false

24  tax return in that he knew he had a duty under U.S. law to report the

25  existence of his foreign accounts and the interest income earned from

26  those accounts on his 2010 U.S. individual income tax return.

27

28

4

1   18.   From at least 2009 until June 2013, KHOUBIAN willfully
2   failed to file FBARs disclosing the existence of his Bank Leumi
3   accounts and his Commerzbank account in Germany.

4   19.   For calendar years 2012 and 2013, KHOUBIAN filed an FBAR
5   that disclosed his Bank Leumi accounts but failed to disclose the
6   existence of his Commerzbank account in Germany.

7   20.   In efforts to conceal his foreign accounts from the IRS, on
8   September 12, 2012, when KHOUBIAN was questioned by Special Agents
9   from IRS's Criminal Investigation Division about his accounts at Bank
10  Leumi, KHOUBIAN falsely stated that the Bank Leumi accounts were not
11  in his name and that he was not aware of the rules requiring U.S.
12  persons to report their foreign accounts.

13  21.   On October 7, 2014, during an interview with Special Agents
14  from IRS's Criminal Investigation Division, KHOUBIAN falsely stated
15  that: (i) he did not own a bank account in Germany during 2005
16  through 2010; (ii) he closed his German account many years ago and
17  moved all of the money to the United States; and (iii) none of the
18  money in his bank account in Germany was moved to Israel.  At the
19  time KHOUBIAN made these statements, he knew that (i) he owned a bank
20  account at Commerzbank between 2005 and 2010; (ii) he had not closed
21  his Commerzbank account in Germany and transferred all of the money
22  ///
23  ///
24  ///
25
26
27
28

5

in that account to the United States; and (iii) he had transferred in excess of $600,000 from his Commerzbank account in Germany to a Bank Leumi account in Israel.

*******************************

I have read this Attachment A to the Plea Agreement and carefully discussed every part of this Attachment to the Plea Agreement with my attorney.  I agree and stipulate to the facts as stated above.

_____          10-31-2018
TEYMOUR KHOUBIAN                          Date
Defendant

I am TEYMOUR KHOUBIAN's attorney.  I have read Attachment A to the Plea Agreement and carefully discussed every part of this Attachment to the Plea Agreement with my client.  To my knowledge, my client's decision to agree to the facts as stated above is an informed and voluntary one.

_____          Oct. 31, 2018
John Hanusz, Esq.                         Date
Attorney for Defendant
TEYMOUR KHOUBIAN

6